**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

BRIGITTE ANIDEY BERISTAIN FUENTES, *et al.*,

Petitioners,

v.

TODD BLANCHE, *et al.*,

Respondents.

Case No. 2:26-cv-02588-RFB-BNW

**ORDER GRANTING WRITS OF HABEAS CORPUS**

Before the Court is a Joint Petition for Writs of Habeas Corpus (ECF No. 1). Petitioners Brigitte Anidey Beristain Fuentes, Ivonne Olguin Perez, Jennifer Anali Guerra Garcia, Sara Isabel Sepulveda Burbano, and Roberto Carlos Osorio Alfaro challenge the lawfulness of their ongoing detention at the Henderson and Nevada Southern Detention Centers in the custody of Immigration and Customs Enforcement ("ICE"). Specifically, Petitioners argue their detention is unlawful under (i.) Jacobo-Ramirez v. Mullin, 834 F. Supp. 3d 1073 (D. Nev. 2026); (ii.) the Immigration and Nationality Act; and (iii.) the Due Process Clause of the Fifth Amendment. For the following reasons, the Court grants the Joint Petition as to Petitioners Olguin Perez and Guerra Garcia, awards them writs of habeas corpus, and orders Respondents to immediately release them from ICE custody.

## I. FINDINGS OF FACT

The Court makes the following findings of fact based on the Parties' undisputed factual allegations in the existing record before the Court, and the evidence they supply. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950).

*i. Petitioners Beristain Fuentes and Sepulveda Burbano*

Petitioners Beristain Fuentes and Sepulveda Burbano have represented to the Court that they are no longer in ICE custody. See Pet'rs' Joint Traverse in Support of Joint pet. for Writ of Habeas Corpus at 2, ECF No. 12 (September 2, 2026) [hereinafter, "Joint Traverse"]. The "traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). Accordingly, because Petitioners Beristain Fuentes and Sepulveda Burbano have been released from custody, the Court finds that their claims are moot. Cf. Picrin-Peron v. Rison, 930 F.2d 774, 775 (9th Cir. 1991).

*ii. Petitioner Olguin Perez*

The Court finds that Petitioner Olguin Perez is a member of the Jacobo-Ramirez Class—a fact undisputed by all Parties. Petitioner has set forth sufficient facts indicating Class membership,[1] and Federal Respondents, in their return to the Joint Petition, concede that Petitioner is a Class Member. See Joint Pet. for Writ of Habeas Corpus at 7–8, ECF No. 1 (August 19, 2026) [hereinafter, "Joint Pet."]; Fed. Resp'ts' Notice Regarding Class Membership at 2, ECF No. 11 (September 1, 2026) [hereinafter, "Return"].

In addition, the Court finds Federal Respondents did not perform an initial custody determination as to Petitioner at the outset of her detention, nor have they provided Petitioner with a custody redetermination hearing to date. Petitioner was taken into ICE custody on July 14, 2026—over two months ago. See Joint Traverse at 3. This Court instructed Federal Respondents to produce specific records as to Petitioner, including a Form I-286. See Order Governing Procedures, ECF No. 4 (August 20, 2026). The government has produced a Form I-286 dated almost a month after Petitioner was taken into ICE custody. See Notice of Custody Determination for Ivonne Olguin Perez, ECF No. 11-1 at 15 (September 1, 2026) ("Date and Time of Custody

[1] The Jacobo-Ramirez certified class includes the following people:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Jacobo-Ramirez, 834 F. Supp. 3d at 1089.

Determination" listed as "08/08/2026"). Thus, the Court finds that Respondents did not perform an initial custody determination for Petitioner at the outset of her detention—*i.e.*, on July 14, 2026.

*iii. Petitioner Guerra Garcia*

The Court finds that Petitioner Guerra Garcia is a member of the Jacobo-Ramirez Class—a fact undisputed by all Parties. Petitioner has set forth sufficient facts indicating Class membership, and Federal Respondents, in their return to the Joint Petition, concede that Petitioner is a Class Member. See Joint Pet. at 8, Return at 2.

In addition, the Court finds Federal Respondents did not perform an initial custody determination as to Petitioner at the outset of her detention, nor have they provided Petitioner with a custody redetermination hearing to date. Petitioner was taken into ICE custody on May 29, 2026—almost four months ago. See Joint Traverse at 3. This Court instructed Federal Respondents to produce specific records as to Petitioner, including a Form I-286. See Order Governing Procedures, ECF No. 4 (August 20, 2026). The government has produced a Form I-286 dated several months after Petitioner was taken into ICE custody. See Notice of Custody Determination for Jennifer Anali Guerra Garcia, ECF No. 11-1 at 29 (September 1, 2026) ("Date and Time of Custody Determination" listed as "08/19/2026"). Thus, the Court finds that Respondents did not perform an initial custody determination for Petitioner at the outset of her detention—*i.e.*, on May 29, 2026.

*iv. Petitioner Osorio Alfaro*

The Parties dispute whether Petitioner Osorio Alfaro has a final order of removal. See Joint Traverse at 4–5; Return at 3. Thus, the Court cannot determine whether Petitioner Osorio Alfaro is a Jacobo-Ramirez class member at this time and finds that additional information is necessary to supplement the record. The Court hereby defers decision on Petitioner Osorio Alfaro's petition.

## II. CONCLUSIONS OF LAW

*i. Petitioners Olguin Perez and Guerra Garcia*

As members of the Jacobo-Ramirez Class, Petitioners are entitled to the relief afforded to the Class by this Court. In its March 2026 Order, this Court declared that class members "are not subject to detention under § 1225(b)(2)(A)"; instead, "they are subject to detention under 8

U.S.C. § 1226(a) and its implementing regulations," which supply a suite of procedural protections. See Jacobo-Ramirez, 834 F. Supp. 3d at 1123. Moreover, Federal Respondents (and this Court) are obligated to abide the Ninth Circuit's binding judgment in Rodriguez Vazquez v. Bostock, which explicitly rejected the government's interpretation of § 1225(b)(2)(A) and held that noncitizens like Petitioner fall within the detention regime set out in § 1226, not § 1225(b)(2)(A). See Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1165 (9th Cir. 2026) ("[W]e conclude that [noncitizens] present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)."). Federal Respondents concede the only lawful basis for detaining Petitioners is § 1226(a), see generally Return, yet have not conducted a proper initial custody determination for Petitioners nor provided Petitioners an opportunity for custody redetermination, as required by § 1226(a) and its implementing regulations. Thus, Petitioners' arrest and ongoing detention without the full suite of procedural protections guaranteed by § 1226(a) are unlawful under the Immigration and Nationality Act ("INA"), this Court's declaratory judgment/vacatur, and the law of this circuit.

For reasons articulated in Angeles-Pena v. Blanche et al., Case No. 2:26-cv-02154-RFB-EJY, 2026 WL 2280939 (D. Nev. Aug. 7, 2026), which are incorporated by reference herein, the Court finds that Petitioner must be released from government custody. The government's failure to perform an initial custody determination as to Petitioners at the outset of his detention and supply them with custody redetermination hearings runs afoul of § 1226(a) and its implementing regulations, as well as this Court's declaratory judgment. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196–97 (9th Cir. 2022); Jacobo-Ramirez, 834 F. Supp. 3d at 1150; Angeles-Pena, 2026 WL 2280939 at *2–3.

The Court further finds Petitioners are entitled to the procedures afforded under § 1226(a) not merely by statute and regulation, but by the Due Process Clause of the Fifth Amendment. For the reasons articulated in this Court's order in Angeles-Pena, which the Court incorporates by reference as if fully set forth herein, the Court finds Petitioners' detention without the procedures required by § 1226(a) and its implementing regulations violates Petitioners' substantive and

procedural due process rights. See Angeles-Pena, 2026 WL 2280939 at *3–9.

Therefore, the Court finds Petitioners' detention to have been unlawful under both the INA and the Due Process Clause from the moment detention began, and immediate release—"the typical remedy" for "unlawful executive detention"—is appropriate here.[2] See Munaf v. Geren, 553 U.S. 674, 693 (2008). Additionally, the Court finds that it must adopt equitable remedies to ensure that Federal Respondents abide by due process moving forward. Cf. U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the Court finds it appropriate to require that, in the event DHS seeks to (re)detain Petitioners under § 1226(a), Federal Respondents must provide them with *a pre-deprivation* bond hearing wherein the government must prove, by clear and convincing evidence, that detention is appropriate. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) (citation omitted) (reviewing EOIR's compliance with a district court's conditional writ, which ordered EOIR to conduct a bond hearing—as a matter of due process—where the government was required to "show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community."); Gonzalez-Juarez v. Bondi, 137 F.4th 996, 1003 (9th Cir. 2025) (describing Martinez). While the Court does not take this step lightly, it finds it is necessary because of Federal Respondents' egregious violations of the law and Petitioners' rights to date.

## III. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** Petitioner Olguin Perez's and Petitioner Guerra Garcia's Petitions for Writ of Habeas Corpus (ECF No. 1) are **GRANTED**.

**IT IS FURTHER ORDERED** Respondents must **RELEASE** Petitioners from detention on their personal recognizance on **September 24, 2026** between the hours of **12:00 P.M. and 3:00 P.M.** Counsel for Petitioner (or their designee/agent) will be permitted to

---

[2] Moreover, the Court finds that, to the extent Respondents have afforded Petitioners *some* procedures associated with § 1226, it is clear from the record that Respondents have admittedly not complied with the regulations in full, as required by the statute, its implementing regulations, and this Court's declaratory judgment. See Jacobo-Ramirez, 834 F. Supp. 3d at 1120; see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201–1202 (9th Cir. 2022). In addition, immediate release is particularly appropriate given Respondents' lengthy history of non-compliance and defiance in similar cases. See Angeles-Pena, 2026 WL 2280939 at *10–13.

wait in the Federal Justice Tower lobby during the release window and to make arrangements for Petitioner's departure from the facility.

**IT IS FURTHER ORDERED** Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioners' liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing. If Federal Respondents impose release conditions in violation of this Order, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** Respondents must return Petitioners' personal property, including any personal identification and employment authorization documents, **UPON THEIR RELEASE**. If Federal Respondents fail to do so, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** Respondents are **PERMANENTLY ENJOINED** from detaining Petitioners pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** Respondents may not re-detain Petitioners during the pendency of their current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under the INA and its implementing regulations. To the extent the government seeks to detain Petitioners under 8 U.S.C. § 1226(a), it bears the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** Respondents' Second Motion to Extend Time (ECF No. 10) is **GRANTED** *nunc pro tunc.*

**IT IS FURTHER ORDERED** the Parties must file a **JOINT STATUS REPORT** by **September 25, 2026** as to each Petitioner, confirming Respondents' compliance with this Order, including: (i) the date and time of Petitioner's release; (ii) compliance with this Court's directives concerning release on personal recognizance; and (iii) the return of Petitioner's personal property.

///

**IT IS FURTHER ORDERED** that the Parties must file a **JOINT STATUS REPORT** by **September 24, 2026** indicating the current status of Petitioner Osorio Alfaro's removal proceedings.

**DATED:** September 23, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**